**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. CR 20-0057 FMO |
| Plaintiff, ) | |
| v. ) | **ORDER RE: MOTION TO DISMISS** |
| JOSE ALBERTO MEDINA ZEPEDA, ) | |
| Defendant. ) | |

Jose Alberto Medina Zepeda ("defendant") is charged with illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b)(2). (See Dkt. 1, Indictment). Defendant filed the instant Motion to Dismiss (Dkt. 25, "Motion"), arguing that 8 U.S.C. § 1326 is unconstitutional and, therefore, the single-count indictment should be dismissed.[1] (See id. at 2). Having reviewed and considered all the briefing filed with respect to defendant's Motion, the court finds that oral argument is not necessary to resolve the Motion, and concludes as follows.

Defendant contends that § 1326 violates the Equal Protection Clause because, although it is facially neutral, it "was enacted with a discriminatory purpose and still has a disparate impact[.]" (Dkt. 25, Motion at 2) (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 97 S.Ct. 555 (1977) ("Arlington Heights")). According to defendant, an Arlington Heights

---

[1] Unless otherwise indicated, all statutory references are to Title 8 of the United States Code.

analysis applies here and demonstrates that § 1326's enactment was "motivated by a racial purpose or object[,]" and therefore, the court should apply strict scrutiny to the review of the statute's constitutionality. (See Dkt. 25, Motion at 5 n. 7) (citing Hunt v. Cromartie, 526 U.S. 541, 546, 119 S.Ct. 1545, 1549 (1999) ("A facially neutral law, on the other hand, warrants strict scrutiny only if it can be proved that the law was 'motivated by a racial purpose or object[.]'")). The government responds that rational-basis review is the proper standard because of Congress's plenary power over immigration policy. (Dkt. 30, Government's Opposition to Defendant's Motion to Dismiss ("Opp.") at 5-7) (citing United States v. Hernandez-Guerrero, 147 F.3d 1075 (9th Cir. 1998)). The government contends that § 1326 is "well within the ambit of Congress's sweeping power over immigration matters[,]" (Dkt. 30, Opp. at 9) (quoting Hernandez-Guerrero, 147 F.3d at 1078), thus mandating rational-basis review of the statute. (See Dkt. 30, Opp. at 9).

In Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S.Ct. 1891 (2020) ("DHS"), the Supreme Court applied an Arlington Heights analysis to a challenge to the government's decision to end the Deferred Action for Childhood Arrivals program. See id. at 1915-16 (plurality opinion). In Ramos v. Wolf, 975 F.3d 872 (9th Cir. 2020), the Ninth Circuit examined the plurality's choice of review standard in DHS in dealing with an Equal Protection challenge – brought in part by alien plaintiffs – to the Department of Homeland Security's decision to end the Temporary Protected Status program that "provides temporary relief to nationals of designated foreign countries that have been stricken by a natural disaster, armed conflict, or other extraordinary and temporary conditions in the foreign state." Id. at 878 (internal quotation marks omitted). The Ninth Circuit rejected the argument that the rational-basis standard applied to plaintiffs' Equal Protection challenge, noting that the Supreme Court has recognized that "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. at 896 (quoting Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001)) (internal quotation marks omitted). "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693, 121 S.Ct. at 2500. Indeed, "the entry fiction does not preclude non-

1  admitted aliens such as [defendant] from coming within the ambit of the equal protection
2  component of the Due Process Clause." Kwai Fun Wong v. United States, 373 F.3d 952, 974 (9th
3  Cir. 2004); see Padilla v. Immigration and Customs Enft., 953 F.3d 1134, 1146-47 (9th Cir. 2020)
4  (same); California v. U.S. Dep't of Homeland Sec., 2020 WL 4440668, *18 (N.D. Cal. 2020) ("If
5  Kwai Fun Wong establishes that non-admitted, but physically present aliens can bring an Equal
6  Protection challenge, then it follows that admitted aliens . . . may also bring an Equal Protection
7  challenge.").

8        Because § 1326 applies to "aliens who are already in the United States, [the government]
9  cannot entirely rely on the plenary power doctrine to uphold the [statute]." California, 2020 WL
10 4440668, at *17. Here, the nature of defendant's Equal Protection claim and his presence within
11 the United States weigh in favor of applying an Arlington Heights standard to his challenge. See,
12 e.g., DHS, 140 S.Ct. at 1915-16 (plurality opinion) (applying Arlington Heights standard to Equal
13 Protection challenge against an immigration policy); Ramos, 975 F.3d at 895-97 (same);
14 California, 2020 WL 4440668, at *19-20 (same).

15       Under Arlington Heights, "[p]roof of racially discriminatory intent or purpose is required to
16 show a violation of the Equal Protection Clause." 429 U.S. at 265, 97 S.Ct. at 563. A party
17 asserting an equal protection claim must show that racial discrimination was at least "a motivating
18 factor" for the action being challenged. Id. at 265-66, 97 S.Ct. at 563-64. "Determining whether
19 invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such
20 circumstantial and direct evidence of intent as may be available." Id. at 266, 97 S.Ct. at 564. This
21 analysis involves inquiry into factors such as the "impact of the official action[,]" id., the "historical
22 background of the decision[,]" id. at 267, 97 S.Ct. at 564, the "specific sequence of events leading
23 up to the challenged decision[,]" id., "[d]epartures from the normal procedural [or substantive]
24 sequence[,]" id., and the "legislative or administrative history[.]" Id. at 268, 97 S.Ct. at 565. A
25 facially neutral law, such as the statute at issue here, "warrants strict scrutiny only if it can be
26 proved that the law was 'motivated by a racial purpose or object[.]'" Hunt, 526 U.S. at 546, 119
27 S.Ct. at 1549; California, 2020 WL 4440668, at *19 ("[I]f plaintiffs are able to demonstrate racial
28

or ethnic discriminatory purpose to be a motivating factor of the [statute], then the court would apply a strict scrutiny standard of review.").

Defendant argues that "the original illegal reentry law was enacted with a discriminatory purpose and still has a disparate impact[.]" (Dkt. 25, Motion at 2). Defendant, relying on the Supreme Court's recent decisions in Ramos v. Louisiana, 140 S.Ct. 1390 (2020) ("Louisiana") and Espinoza v. Mont. Dep't of Revenue, 140 S.Ct. 2246 (2020) ("Espinoza"), contends that "when a court determines that a law's original enactment was motivated by a desire to discriminate . . . on account of race and the section continues to this day to have that effect, the court must conclude that the law violates equal protection under Arlington Heights." (Dkt. 25, Motion at 19) (internal quotation marks omitted); (see id. at 17-19). According to defendant, a detailed analysis of the historical background of the Undesirable Aliens Act of 1929 reveals that "racism and eugenics" were a motivating factor in the passage of that law. (See id. at 6-17). Defendant's contentions are unpersuasive.

In Louisiana, the issue was whether "the Sixth Amendment right to a jury trial . . . require[d] a unanimous verdict to convict a defendant of a serious offense." Louisiana, 140 S.Ct. at 1394 (footnote omitted). Although the Supreme Court noted the "racist origins" of the Louisiana and Oregon statutes at issue, the Court's reasoning primarily rested on an examination of common law rights to a unanimous jury verdict, i.e., "the historical meaning of the Sixth Amendment's jury trial right, [and] th[e] Court's long-repeated statements that [the Sixth Amendment] demands unanimity[.]" See id. at 1399-1402, 1405. The Supreme Court emphasized that the Sixth Amendment required "judges to assess the functional benefits of jury rules[,]" and this necessarily entailed "acknowledging the racist history of Louisiana's and Oregon's laws[.]" Id. at 1401 n. 44. Nevertheless, "a jurisdiction adopting a nonunanimous jury rule even for benign reasons would still violate the Sixth Amendment." Id.

In Espinoza, the Supreme Court examined "whether the Free Exercise Clause . . . barred" application of the Montana State Constitution's "no-aid" provision which prohibited the use of tuition assistance provided by the state when used toward religious schools. See 140 S.Ct. at 2251. Defendant asserts that the "majority relied on the law's 'checkered tradition' of underlying

4

religious discrimination, even though it was reenacted in the 1970s 'for reasons unrelated to anti-Catholic bigotry.'" (Dkt. 25, Motion at 18) (quoting Espinoza, 140 S.Ct. at 2259). However, the Espinoza Court did not rely on the Montana provision's "checkered tradition" as the basis for its decision. Rather, the Court invalidated the no-aid provision because it "bars all aid to a religious school simply because of what it is, putting the school to a choice between being religious or receiving government benefits." Id. at 2257 (internal quotation marks omitted). In addressing the Montana Department of Revenue's argument that the State's no-aid provision was supported by "a tradition *against* state support for religious schools [that] arose in the second half of the 19th century," the Court stated that "[t]he no-aid provisions of the 19th century hardly evince a tradition that should inform [the Court's] understanding of the Free Exercise Clause." Id. at 2258-59.

In short, the court is unpersuaded that Louisiana and Espinoza support defendant's contention that § 1326 should be judged according to legislative history from laws enacted decades earlier, and that "later reenactments do not cleanse the law of its original taint." (Dkt. 25, Motion at 18-19). Courts examining constitutional challenges to § 1325, a statute that also criminalizes unauthorized entry into the United States, have rejected arguments that rely "entirely on legislative history from the 1920s, decades before § 1325[] was enacted" and ignore later enactments of the actual statute at issue. See, e.g., United States v. Lucas-Hernandez, 2020 WL 6161150, *2-*3 (S.D. Cal. 2020) (rejecting identical interpretations of Louisiana and Espinoza where defendant ignored subsequent enactments of pertinent statute); United States v. Lazcano-Neria, 2020 WL 6363685, *7-*8 (S.D. Cal. 2020) (same).

Although § 1326 was first enacted in 1952, as part of the Immigration and Nationality Act ("INA"), see Pub. L. No. 82-414, 66 Stat. 229 at § 276, and is thus the relevant statutory framework here, defendant attempts to tie the legislative history of the 1920s to the INA's 1952 passage. (See Dkt. 31, Reply [ ] at 7-10). Defendant provides no authority or basis for the court to evaluate the 1952 statute solely on the basis of the legislative history relating to the Undesirable Aliens Act of 1929. (See, generally, Dkt. 25, Motion); (Dkt. 31, Reply [ ]). Further, with respect to the passage of the operative statute in 1952, defendant fails to provide any specific evidence establishing that an "invidious discriminatory purpose was a motivating factor" in its enactment.

(See, generally, id.); see, e.g., United States v. Rios-Montano, 2020 WL 7226441, *5-*6 (S.D. Cal. 2020) (defendant "failed to provide any legislative history or other evidence suggestive of the motives of the [relevant] Congress" where he relied solely on the "lack of Congressional disavowal of the discriminatory purposes of the previous version" of a statute).  In short, defendant has failed to put forth sufficient evidence establishing that racial discrimination was a motivating factor in the enactment of § 1326, and his Equal Protection challenge is accordingly denied.[2]  See Arlington Heights, 429 U.S. at 270-71, 97 S.Ct. at 566 ("Respondents simply failed to carry their burden of proving that discriminatory purpose was a motivating factor[.] This conclusion ends the constitutional inquiry."); see, e.g., Rios-Montano, 2020 WL 7226441, at *8 (denying similar constitutional challenge to § 1325 once defendant failed to meet "his burden of showing that Congress acted with a racially discriminatory motive" under Arlington Heights).

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT defendant's Motion to Dismiss **(Document No. 25)** is **denied**.

Dated this 5th day of January, 2021.

/s/<br>Fernando M. Olguin<br>United States District Judge

---

[2] In light of the court's conclusion, it is unnecessary to address defendant's disproportionate impact argument.  Cf. Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049 (1976) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious discrimination forbidden by the Constitution.  Standing alone, it does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny[.]") (citation omitted)